Mr. Beck, you're on. May it please the court. My name is Brandon Beck and I represent Aaron Redmond, the opinion here today. Your honors, this case is about honoring the Sentencing Commission's drafting decisions as well as the Supreme Court's guidance that correctly calculated guidelines are the starting point and lodestar of sentencing decisions. And there are three reasons why this court should reverse and remand for resentencing. First, the facts do not support the guidelines definition of abducted. Second, the district court's guidelines error was not harmless. Third, in the alternative, the district court sentence was substantively unreasonable. To my first point, your honors, the facts of this case do not support the elements of abduction. Mr. Redmond's offense level was enhanced on the basis that, quote, a person was abducted to facilitate commission of the offense or to facilitate escape. The guidelines define abducted to mean, quote, that a victim was forced to accompany an offender to a different location. The example the guidelines provide is a bank teller being taken into a getaway car. The fundamental question in this case is whether when the tellers were told to go to the back room in Cal 200, whether they accompanied the offender when they did so. The answer to that question under the plain meaning of accompany is no. And I'd like to emphasize a more global intuitive point here, which is that when the victim and the offender are going in opposite directions, that reduces the danger to the victim in those circumstances. If the offender goes with the That's the importance and that's the difference that we're trying to emphasize here today. There are multiple ways this court could approach getting at the question of whether the offender, Mr. Redmond, accompanied the victims to the back room when they went to Cal 200. First and foremost, this court should apply the plain meaning rule because there is so in the definition of abducted. Under the plain meaning rule, courts look to dictionary definitions when evaluating what the language of a guidelines provision or statute means. In our brief, we've cited several dictionary definitions. All point to the intuitive answer, the way we always use the term accompany, which means to go with. In addition, the Supreme Court in 2016 in Whitfield v. United States, not dealing with the guidelines, but dealing with the statutory definition of abducted, Justice Scalia reached the conclusion that accompany means to go with and always has meant to go with. And that's simply the point that we're making today. If this court were to conclude that there is an ambiguity as to the meaning of accompany, there are two canons of construction, one textual and one substantive that we believe can resolve this question. First, the textual canon being the surplusage canon, which of course says that courts must give meaning and effect to any word or phrase in a guideline to the extent possible and to the extent reasonable. Here, we believe that the government's and the district court's interpretation of accompany effectively reads it out of the statute. We can see this in the pre-sentence report on page 154 of the record, where the PSR applies the abduction enhancement. And when applying the language of the guidelines provision to the facts of this case, it says, specifically, he forced VP and GS, who are the tellers, to walk to a room adjacent to the teller counter. He told them to shut the door and count to 100, and he left the bank thereafter. If you look at that factual description, it does describe force, it does describe movement of a different location, but it omits in that description any description of accompaniment, effectively reading it out of the guidelines provision. The guidelines provision itself in the definition of abducted contains the three elements, force, accompaniment, and location. Here, only force and location were met. Alternatively, if this court were to reach another canon of construction, this time a substantive canon of construction, the rule of lenity. There is some disputing in this case as to whether the rule of lenity was preserved is an argument below. The government asserts that the rule of lenity question is on plain error because it was not mentioned by name. It's our position that this court need not reach rule of lenity or even surplusage canon and can resolve the guidelines error on the plain meaning rule alone. But at any rate, if you look at the transcripts and that's on pages 114 to 120 of the sentencing hearing, the government's primary argument was that the abduction enhancement in its terms have been interpreted and applied flexibly. Our argument before the district court is that a company is different in kind from both force and location and should therefore be treated strictly. That is the very essence of the rule of lenity, which is a dispute over the strict or flexible interpretation of a statute. For these reasons, the district court committed guidelines error. But there is another important thing to reach here, which is my second point, and I believe the government may rely on it heavily, which is the argument that the district court's guidelines error, even if it existed, was harmless because as the district court stated on page 134, it would have imposed the same upward variance nonetheless. I'd like to make a couple observations about this, starting with some law and then talking about the facts and some observations about the sentencing transcript itself. Of course, as this court has stated in United States v. Halverson in 2018 and elsewhere, the proponent of the sentence, in this case the government, carries a high and heavy burden. As the Supreme Court observed in 2016 in Molina-Martinez v. United States, guidelines error will typically affect the outcome. Of course, that was dealing with a third prong of plain error review, but that's a very similar analysis to harmlessness. This court described in United States v. Castro in 2016 that the overarching principle that we look to when evaluating harmlessness is clarity and certainty of what the district court would do, and it's our position that this sentencing transcript, which is seen in pages 112 to 138 of the record, lacks the clarity needed to reach a harmlessness conclusion. In fact, the sentencing transcript itself sends mixed messages. First and foremost, from pages 114 to 120, that's seven pages inclusive, the district court spent a significant amount of time litigating the abduction enhancement. Following that, on page 128, the district court mentioned a range of possible punishments, stating, quote, the community would be ill served if he was back in the community in the near future or any time in the next 10 to 15 years. Then, only after litigating the abduction issue for seven pages, mentioning a range of... You keep using the word litigating. That's not really what you mean, is it? What I mean, your honor, is that the court spent a considerable amount of time considering and hearing arguments on the abduction enhancement. The notion that the district court would have imposed that same 180-month sentence either way. Well, actually, Mr. Beck, doesn't it support the notion that the mistake either way may not have mattered because he found the conduct that was being called the abduction, whether it was an abduction or not, the conduct should be a little extreme, that it warrants the higher variance even if it would not warrant the sentencing guideline enhancement. Isn't that how we should construe the overall context of him spending so much time on it and then saying, either way, I'd come out the same way, and then saying, having considered the factors, here's where I'm going. I don't think we should be sanctioning the district judge for having spent time on his subject because that could support the fact that it doesn't matter whether you add the enhancement because the conduct was violent and wrong. Well, your honor, I would agree with you if the conduct itself were being disputed, but here none of the facts were in dispute. The seven pages were spent arguing over whether the enhancement, in other words, there was no dispute that there was a threat or a change of location or any of those things that happened. It was simply a question during those seven pages as to whether the enhancement was supported in the guidelines. Right, but having spent so much time on that enhancement, the conduct underlying that enhancement is now front and center in the judge's mind. And so what I'm saying is, it very well could be underlying why the four-level enhancement doesn't matter to his final sentence was because having thought about it, even if objection requires that you physically accompany, he felt this was enough that even if that weren't true, that the four-level enhancement still should be considered as part of the variance. I mean, in other words, I'm just concerned. I think judges have to do the right thing. They have to have a good record. I'm not disputing that in any way. But I'm concerned about parsing every word a judge says instead of looking at the overall context of what the judge did. And here the judge didn't just dismiss you and go, ah, it's an objection. The judge considered it. Y'all argued it. There was detail. There was this and that. And then after that says, look, I think this variance is right with or without the enhancement. Why isn't that exactly the sort of thing we tell judges to do and therefore affirm because it's within their discretion? Your Honor, I want to be very clear that I'm not criticizing the district court for doing that. The district court should consider these enhancements and hear arguments about them extensively. I'm simply saying that that reflects on the fact that the district court's decision as to the guidelines influenced the district court's ultimate decision as to the sentence, as it certainly should. The guidelines are the starting point, are the low start, are the central feature of sentencing in district court. And I believe that's what happened here. In the alternative, Your Honor, if we look to the language on page 134 of the record where the district court said, I'm doing this without regard to what the advisory guidelines might be in the case, if we take the district court at face value in isolation there, it gives rise to a different problem, which is an indication that the district court did not consider an essential sentencing factor, thus rendered a substantively unreasonable sentence, which is my third point, Your Honor. But there I do think you have to look at the overall context. He said he considered the 3553A factors and originally said that what he meant by the guidelines don't matter is the four-level enhancement, not just I'm throwing them out the window. It's the four levels, either way, I'm not, that's not affecting my outcome. And that is, we have blessed that many times. We've said that that can be sufficient to support harmless error. Certainly, Your Honor, this court has blessed harmless error review when there's clarity and certainty as to what the district court did. My best argument on harmlessness otherwise is the amount of time the mention of a range of punishments and then the ultimate adoption of the highest range of the punishments after rejecting the defendant's objection. But the point I'm making here is we either take the district courts at full face value here or we don't. And if we do, it does give rise to a different sort of problem, which is the third point on substantive reasonableness. And, Your Honors, it's for these reasons, because of the guidelines error, number one, number two, because there does lack absolute certainty or clarity or the type that we see in these cases to reach the conclusion that it's harmless. And then third, if we take that statement at face value, it appears that the district court may not consider the guidelines at all that we ask this court to reverse and remand for re-sentencing. All right. Thank you. All right. We'll hear from the government. Ms. Grand. May it please the court, Amber Grand for the United States. This court need not, in fact, reach the abduction enhancement, even though the government maintains it was properly applied in this case, because the record is crystal clear that the district court would have imposed the same sentence. And contrary to opposing counsel's statement, this sentence was not, in fact, calibrated in connection with the advisory guideline range. The advisory range was 78 to 97 months, and the district court imposed a non-guideline sentence of 180 months. So unlike each and every case cited by the appellant where the district, where this court declined to find harmless error, the ultimate sentence imposed here was not made in reference to an incorrect range. It was made separate and independent, and based on the detailed reasons given by the district court at the sentencing hearing. So how do you address the fact that we've got a little bit of tension here between the fact that we'll say it's harmless error if the judge said I would have done it anyway, even without the guidelines there. But we also say guidelines are, you know, lodestars, et cetera, et cetera, very important considerations. So how do you deal with Mr. Beck's sort of two and three arguments and the interjunction of those? And there certainly is some tension in that precedent, but the way this court has resolved it has been to look at the language the district court uses, and it applies the two-factor test. What if it applied, would it impose the same sentence for the same reasons given, and sometimes adds a third prong, where the ultimate sentence influenced by the incorrect guideline range. And here each of those prongs is met. We have a specific non-guideline sentence that was selected by the district court. We have detailed reasons that were given on the record. There was no reference made in giving those reasons to the advisory range or to the abduction enhancement. Instead, the district court looked at three categories of conduct. The first was what it called the disturbing nature of the bank robbery at issue, forcing the 71-year-old teller to get on her knees, brandishing a semi-automatic firearm. The court then moved to the second category of facts, which was his commission of three additional bank robberies. The court walked in detail through each of those bank robberies, and found that the bank robberies were not accounted for as relevant conduct and therefore were not reflected in the guideline. The court then moved to the third and final category, which was the assault on the appellant's wife, which took place one week after the final bank robbery. So there was no cessation of criminal conduct before his arrest. In fact, it looks to be a matter of happenstance that after being released from the hospital, she uncovered the duffel bag of masks and a fake beard and fake license plates and turned it over to detectives. So the court looked at the sum of these facts and found that he was a, quote, very violent person, and that section 3553 factors required him to be imprisoned for a specific term of 180 months. So the district court did what it was required to do under section 3553. It calculated what it believed to be the correct guideline range, but then it determined that a different specific sentence was necessary under the remaining section 3553 factors. And unlike every case cited by the appellant from Martinez, Romero, and onward, there was no calibration of the ultimate sentence to the incorrect range. In every case cited by the appellant, the ultimate sentence imposed was at bottom of the advisory guideline range. Here we have a variant sentence, it was not imposed within the correct range. And as a result, there's no evidence that it improperly influenced the district court's ultimate sentencing determination. And for that reason, we fall under the other category of harmless error cases from Castro Alfonso to Halverson, where the court can find the court would have imposed the same sentence for the same reasons. And honestly, it's hard to imagine a record that could make that point more clearly. We should take the district court at its word that it carefully considered the facts of this offense, of the other criminal conduct, of all the pertinent factors, and came up with a specific sentence that it believed was appropriate. And we should take the court at its word and find that any purported error in this case was in fact harmless. That said, the government maintains that the abduction enhancement was properly applied here. Mr. Redmond advocates for a narrow mechanical view of the term accompany, but this court's precedent instead has taken a flexible case-by-case approach when approaching the abduction enhancement. In fact, cases that have said case-by-case have involved sort of like if he had taken her by the arm, but it was all still within the bank, that's what we've been looking at. Is that really an abduction? If I'm in my house and you moved me from the guest bedroom to the master bedroom, is that an abduction? That's what those cases have been about. They haven't been about did the person have to physically accompany or was it enough that they sent you there, right? That's correct. And we have not been able to locate precedent in this circuit or others that has addressed this accompaniment argument. The case law that is out there in this circuit and others is on the force component and on the location component. However, in United States versus Keogh, this court did uphold the abduction enhancement where the offender stood in one location in the bank, brandished a firearm and demanded that the bank tellers move from their location in the offices to the main lobby to facilitate commission of the offense. So that was a case where the offender did not move along with the bank tellers and the location was the issue in that case, but it's a set of facts that are more similar to this case where you have the offender forcing him by threat of a firearm, the victim to move to a different location and the court found that the abduction enhancement was properly used in that case. So that would be one example. If we decide that we do have to reach this issue, that it would not be harmless error and we do have to reach the issue, are we going to encounter a bunch of sort of technology accompanying arguments down the road? For example, if there was a drone following me as the kidnapper said move from point A to point B, but the kidnapper stood silent but sent a drone, does it matter whether you're being followed by, I don't know, iPhone or some other technology? I'm not a techno genius, but I'm just wondering, are we going to start to get those cases and how will those evolve if we are to say a company requires physical movement, if you will? You know, it's an interesting question. I can't say that I have seen that arise. I would imagine that this court would still have to take a case by case approach and look at the plain dictionary meaning of the term accompany, which is not as limited as Mr. Redmond advocates. In fact, if this court looks at each and every definition cited, they don't start and end with to go. There is no movement requirement. In fact, each definition also includes to be present or attend or to be with. And so if you read the plain meaning of the term accompany in full instead of with the narrow view advocated by Mr. Redmond, then the plain meaning of that term would support application in a case like this where you have a very close proximity. So if you have a technological component to that where an offender is using technology to stay with or to remain with a victim while forcing them to a different location, then perhaps the abduction enhancement would be proper in that case. But it's certainly clear that we had actual physical proximity here. The record at page 198 has the screenshot from the surveillance video at the time of the robbery. That video shows that Mr. Redmond was at the teller counter and it's difficult to see, but you can see that the teller counters are numbered. He is at the teller counter close to the adjacent room at the time that he forces them to move to a different location. And the video itself is not in the record. I've viewed that video in connection, you know, in preparation for argument. Unfortunately, it's not a fluid video. It's a series of the sort of screenshots that you would see in the record. But this video itself shows that he was on an arm's reach away, armed with a semi-automatic firearm, wearing a hoodie and a mask and demanding, the record shows in the PSR that he was demanding more money. There has to be more, throwing the bag back at them, reaching through the counter. So he's very much in direct proximity to these victims at the time he forces them to change location. So the plain definition of a company to be present with, to attend, isn't satisfied in this case. And the district court, looking at that record evidence and deciding that he was close enough, and particularly in light of the fact that he was carrying a firearm, which would reach much further than arm's length, was sufficient to rely on the line of cases most recently adopted in United States versus Smith, where this court explained that the forced movement of bank employees from one room to another during the course of a robbery, so long it is to facilitate the offense or escape, is enough to apply this enhancement. And so the plain definition of a company combined with that flexible precedent is more than ample authority for this court to determine that no error occurred when that was done. That said, the government would reiterate that any error here would be harmless, given the plain statements of the district court on the record. And if there are no additional questions, the government will rely on its briefing and see the remainder of its time. All right. Any additional questions from the panel? All right. Hearing none. All right. Thank you. All right. We're back to you for rebuttal, Mr. Beck. Thank you, Your Honors, and may it please the court. I'd like to talk a little bit about the abduction enhancement. Starting with United States versus Keel, here's the facts from the opinion. While one robber vaulted the bank teller counter, the other robber secured the offices and other rooms. During the robbery, one of the robbers also held his firearm to the head of a bank employee, directing the employee to fill a backpack with cash. Multiple robbers enter. One stays at the bank, secures the offices, then brings those people to the lobby and tells them to lay down on the floor. So there is accompaniment there physically. At any rate, accompaniment was never raised by the defendant either. Specifically to some of these other cases, the district court relied on three cases in the sentencing transcript to reach its conclusion, United States versus Buck 2017. Every one of those cases involved a dispute about how much movement is required for location. That is not in dispute here. We accept those cases. There's no tension between those cases and what we're arguing today. And if you look at all of the cases cited in all of the briefing and mentioned before the district court, looking at the question of this flexible interpretation, they all trace back to United States versus Hawkins in 1996. And that was another different location question. And that's where the defendant physically dragged a victim 50 or 60 feet in a parking lot. And this court ultimately held that there's a flexibility there when you move that far from one distinct point to another. We're going to call that a change in location. But what's being lost here, I think, is the guidelines the defendant abducted. Ask yourself whether this happened. Was a victim forced to accompany Mr. Redmond to a different location? That's what the guidelines say has to happen in order for this enhancement to apply. Was the victim forced to accompany him to that back room? The answer is no, because he never went to that back room. And I know that sometimes dictionary definitions can almost get confusing as to how these words are being used. But this is not my definition. This is American Heritage. This is Webster's. And it's the same definition adopted by the United States Supreme Court in Whitfield versus United States where Justice Scalia said accompany means to go with and it is consistent with the way we always use it. That's also consistent with the guidelines policy rationale, at least how I interpret it, that when the bad guy and the victim go in different directions, that's a good thing. And when they go in the same direction, particularly to a closed room, that's when we want to punish the bad guy more because that's what creates more danger. The tellers, the safest time that they ever experienced in this is when they were in the back room when Mr. Redmond was walking out the front door of the bank. And I think that the guidelines really are looking at that type of behavior where he absolutely needs to be punished more if he goes back into that back room because that creates the life or death situation where the contact. But when Mr. Redmond is walking out the front door, that's a good thing from the guidelines perspective, even though everything that happened before that is horrific. And, of course, I would never want to minimize that. Back to taking the district court, I would like to address the three cases the government cites as to harmlessness, talking about same sentence, same reasons. There is a little bit more to those cases, Richardson, Castro, Alfonso, and Halverson, that I think gets at what I'm trying to establish here. Here's some language from Castro, Alfonso, for example. The district court was firm, plain, and clear in expressing the court's reasoning, and we take them into this word. From United States v. Richardson, there was a careful description of the impact of each sentencing factor. I don't believe that's something we see here. And then the United States v. Alfonso, there was clarity of intent expressed by the district court. I think there are some mixed messages here. If we take it far enough, it becomes substantively unreasonable in the alternative. We ask this court to reverse and remand. Thank you, your honors. All right. Thank you, counsel, for both sides. Appreciate the briefing and the argument. Case will be submitted, and we will decide it in due course. That concludes the argument in this case. We'll take a brief recess before we call the next clerk. Madam clerk, will you disengage the lawyers in this case?